UNITED STATES of America, Appellee,

v.

Yessid FUENTES–MORENO,
Defendant, Appellant.

No. 89–1279.

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1989.
Decided Jan. 31, 1990.

---

Norberto Colon, for defendant, appellant.

Antonio R. Bazan, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief for appellee.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Yessid Fuentes–Moreno, a Columbian citizen, pled guilty to a charge of possessing heroin on board an aircraft arriving in United States customs territory, a violation of Title 21, U.S.C. § 955. He does not contest the underlying conviction but claims that the district court imposed an improper sentence under the Federal Sentencing Guidelines. *See* The Sentencing Reform Act of 1984, codified at 18 U.S.C. §§ 3551 *et seq.* and 28 U.S.C. §§ 991–998.

I.

Fuentes–Moreno and two others were indicted by a federal grand jury on three counts: importing heroin into Puerto Rico from Ecuador, possessing heroin with intent to distribute it, and possessing heroin on board an aircraft arriving in United States customs territory, violations of 21 U.S.C. §§ 952(a), 841(a)(1) and 955. All three defendants initially pled not guilty but, on the day before trial was scheduled to start, Fuentes–Moreno changed his plea to guilty on Count Three. Co-defendants Virgilio Flores–Vallejo and Oscar Eusebio Sanchez–Carrizo proceeded to trial and were acquitted.

The same judge who presided at the trial of Fuentes–Moreno's co-defendants presided at his change-of-plea and sentencing hearings. Fuentes–Moreno was sentenced to a term of sixty-eight months of imprisonment, four years supervised release and a monetary assessment of $50. He appeals his sentence on two grounds. First, he contends that the district court erred in adjusting his base offense level up by two points because it failed to articulate the facts supporting its finding that Fuentes–Moreno was the leader of the drug transaction. Second, Fuentes–Moreno argues that his sentence should have been based on the offense level applicable to cocaine, not heroin, because he believed the illegal substance was cocaine.

II.

Under the Federal Sentencing Guidelines, sentencing is determined by two main factors, the defendant's offense and his criminal history. *See* United States Sentencing Commission, *Guidelines Manual* (Nov.1989) ("the Guidelines"). The statute under which the defendant was convicted sets the base offense level. This level may be increased due to "specific offense characteristics" or adjusted upward or downward depending on variables such as the defendant's "role in the offense." The defendant's past conviction record determines his criminal history score. The district court determines the offense level and the criminal history category from the information contained in the presentence report prepared by the United States probation officer. The sentencing range is then

found in a table in the Guidelines cross-referencing these two factors. Departures from the Guidelines may also be justified from the information contained in the presentence report. *Id.*

The presentence report on Fuentes–Moreno describes his and his co-defendants' arrival at Luiz Munoz International Airport in Carolina, Puerto Rico. According to the report, after debarking from the plane the defendants walked separately towards the United States customs area, where they were individually questioned. Each stated that he was in Puerto Rico to conduct business in the flower trade but could not provide names or addresses of their alleged contacts. Upon further questioning, Flores–Vallejo indicated he was travelling with Fuentes–Moreno. A search of Flores–Vallejo's person revealed a wallet (passport holder) containing a powdery substance, which field tested positive for heroin. Upon his arrest, he stated he had no knowledge that there were drugs in the wallet and that it was given to him at the airport in Ecuador by Fuentes–Moreno. No drugs were found on Fuentes–Moreno, but he was carrying papers belonging to the other two. When asked about Sanchez–Carrizo, Fuentes–Moreno said he had stayed behind in Ecuador. Sanchez–Carrizo was later spotted and searched as he tried to leave the customs area. He was wearing a belt containing heroin. He stated that Fuentes–Moreno gave him the belt. The two were then arrested. A subsequent inspection of the airline tickets used by defendants showed that all three were purchased in cash, the same day, at the same place, and had sequential numbers.

Pursuant to Section 2D1.1(a)(3) of the Guidelines, the probation officer determined that the base offense level for the amount of heroin involved in this case, 163 grams, was 26. The officer adjusted the offense level up two points pursuant to Section 3B1.1(c) on the basis of evidence showing that Fuentes–Moreno was the organizer, leader, manager or supervisor of the offense. He then subtracted two points pursuant to Section 3E1.1(a) because the defendant had accepted responsibility for his crime.

The sentencing judge adopted the probation officer's calculation of the offense level. He made a specific finding that the defendant was the leader of the drug transaction. In the course of doing so, he noted that he had presided at the trial of Fuentes Moreno's co-defendants and that he had read the presentence report; he did not recite any specific facts supporting his finding. Fuentes–Moreno claims that because the facts relied on were not sufficiently articulated, he had no opportunity to refute them and therefore the two-point increase in sentencing offense level was error.

## III.

The determination of a defendant's role in an offense is heavily dependent on the facts of the particular case and as such is subject to review under the clearly erroneous standard. *United States v. Wright*, 873 F.2d 437, 444 (1st Cir.1989) (sentencing court's finding that defendant was not a "minor" participant in an offense is essentially factual and "clearly erroneous review" is appropriate); *United States v. Mejia–Orosco*, 867 F.2d 216, *adhered to, reh'g denied*, 868 F.2d 807 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989) (sentencing court's finding that defendant played an "aggravating role" in the offense is essentially factual and "clearly erroneous" review is appropriate).

Applying this test, we find that the court did not err either procedurally or substantively in imposing the sentence it did. Although Fuentes–Moreno complains about the judge's general reference to the trial of Fuentes–Moreno's co-defendants, under the circumstances we see no error in this. A judge necessarily considers the circumstances of an offense and considers facts related to the crime in selecting the appropriate punishment. "Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986). The pre-

sentence report and the defendant's answers to specific questions at the hearing more than adequately support the judge's finding. The defendant and his attorney had seen and discussed the report with the probation officer prior to the hearing. Fuentes–Moreno objected generally to the upward adjustment for his managerial role in the offense but did not challenge any of the factual information contained in the report.[1] At the hearing, when asked whether he provided the wallet and belt full of drugs to his co-defendants, Fuentes–Moreno admitted having done so. "We decline to require the judge to write out more specific findings about the defendant." *United States v. Mejia–Orosco*, 867 F.2d 216 at 221.

We point out that although two points were added to Fuentes–Moreno's base offense level for his leadership role in the crime, two points were subtracted for his acceptance of responsibility and showing of remorse. Thus, his total offense level remained at 26. The sentence of 68 months imprisonment was within the 63–78 month range applicable to that offense level. If he were not considered the leader/organizer, his base offense level would have been 24, resulting in a sentencing range of 51–63 months. Nonetheless, the statutory minimum sentence, as opposed to the guideline range, would remain 60 months. 21 U.S.C. § 960(b)(2).

### IV.

Fuentes–Moreno's second claim is that he thought the substance he was transporting was cocaine rather than heroin. Therefore, he argues that the judge should have calculated his sentence on a base offense level of 18, which covers transactions involving 163 grams of cocaine, rather than 26, which is the base offense level for the same amount of heroin.

Although ignorance or mistake of fact may provide a defense to a crime if it negates the requisite element of intent, Fuentes–Moreno is here appealing his sentence pursuant to a guilty plea, not his conviction. Count Three of the indictment charged Fuentes–Moreno with unlawful possession of heroin on board an aircraft arriving in United States customs territory. This count was read to the defendant when he changed his plea from not guilty to guilty. He was asked at that time if he was pleading guilty for any reason other than that he was guilty as charged, and answered in the negative. He was sentenced on the basis of this plea to the specific charge of possessing heroin, not cocaine. Under these circumstances Fuentes–Moreno's proclaimed belief that the substance was cocaine does not require imposition of a punishment other than the one given.

It must be noted that at the sentencing hearing the judge himself showed some initial confusion as to whether the drug involved was cocaine or heroin.[2] There is no question, however, that the indictment, the petition to plead guilty, the presentence report, and the judgment of the court identify the substance as heroin and impose the appropriate penalty for that drug. In fact, the judge declined to make an upward departure from the guidelines on the basis of the high purity of the heroin involved, as

1. Of course, had Fuentes–Moreno alleged a factual inaccuracy in the report, Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure would have required the district court to make either a finding on that issue or a determination that no such finding is necessary. *See United States v. Gerante*, 891 F.2d 364, 366 (1st Cir. 1989).

2. 21 U.S.C. § 960(b)(2) prescribes a five year minimum term for violations of Section 955 (possession on board an aircraft) involving 100 grams or more of heroin or 500 grams or more of cocaine. Thus the sentencing judge misstat-

ed the law when he said: "In addition, according to Title 21, U.S.Code Section 960B(2)(a) a five year minimum term of incarceration is prescribed for any offense involving one hundred grams or more but not less than one kilogram of heroin or cocaine." Because the five year minimum was correct as to 100 grams or more of heroin, and the amount involved in this case was 163 grams, the judge effectively corrected his error by inquiring of the probation officer, "Let me ask you something, was it heroin or was it cocaine?" The officer answered, "The lab report specifies it was heroin."

had been suggested by the probation officer in the presentence report.

### V.

In sum, we hold that the district court's finding that Fuentes–Moreno played a leadership role in the offense was not clearly erroneous and its application of the Guidelines was correct.

*Affirmed.*