14 F.3d 45
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES OF AMERICA, Plaintiff, Appellee,
v.
Daniel A. ATILIO-ADINOLFI, Defendant, Appellant.
 No. 93-1029.
 United States Court of Appeals,
First Circuit.
 December 30, 1993
 
 Appeal from the United States District Court for the District of Puerto Rico
 Benicio Sanchez Rivera, Federal Public Defender, and Miguel A.A. Nogueras-Castro, Assistant Federal Public Defender, on brief for appellant.
 Charles E. Fitzwilliam, United States Attorney, Carlos A. Perez, Assistant United States Attorney, and Jose A. Quiles-Espinosa, Senior Litigation Counsel, on brief for appellee.
 D.Puerto Rico.
 AFFIRMED.
 Before Cyr, Boudin and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Defendant-appellant Daniel Atilio Adinolfi pleaded guilty on September 10, 1992 to several counts of an indictment charging him with conspiracy to possess with intent to distribute narcotics, distribution of narcotics, and possession with intent to distribute narcotics. From October 22 to 29, 1992, one of Atilio's alleged co-conspirators, Jairo Giraldo Parra, was tried under the same indictment. On December 16, 1992, following receipt of the presentence investigation report ("the PSI report"), the district court sentenced Atilio to concurrent terms of ninety-two months' imprisonment on each count, a supervised release term of five years, and a special monetary assessment of $ 350. In arriving at this sentence under the sentencing guidelines, the district court made a two-level upward adjustment in Atilio's offense level pursuant to U.S.S.G. Sec. 3B1.1(c) on the ground that Atilio was a "manager" or "supervisor" in the narcotics distribution conspiracy. Atilio appeals from this upward adjustment. We affirm.
 
 
 2
 In explaining its ruling that Atilio was a "manager" or "supervisor" in this criminal organization, the district court stated,
 
 
 3
 The Court has heard argument of counsel and has heard the defendant and is now ready to rule on the issue of the two points on the issue of supervisor-supervisory role. The-this Court is in a position to rule on this issue particularly because I presided over the trial of Jairo Giraldo Parra, and certainly the facts in that case establish that-those facts establish-establishes that the defendant Adinolfi, Atilio Adinolfi, certainly held a position of trust and confidence with-within Giraldo Parra's drug trafficking organization and he certainly played a supervisory role, a very important role.
 
 
 4
 He was present at most of the transactions. He also drove with one of the agents who was acting as a[n] undercover agent. He also participated in the transactions, and certainly he was there in charge of the business, too, sometimes in the counter, and he was a very important cog in the trafficking machinery constantly oiled by Parra. Therefore, I shall deny you[r] counsel's motion to eliminate the two-points enhancement under Section 3B1.1B [sic] of the sentencing guidelines.
 
 
 5
 Atilio objects on appeal, as he did in the district court, that it was impermissible for the district court to rely on evidence introduced at the trial of Jairo Giraldo Parra. Since Atilio, having pleaded guilty, was not a party to that trial, Atilio argues that he had no opportunity to cross-examine the witnesses who provided the evidence the district court used against him. Once that trial evidence is excluded, Atilio contends, there was insufficient evidence before the district court to justify the upward adjustment.
 
 
 6
 We have stated that "[i]t is well settled that during the sentencing proceedings, a district court has broad discretion in determining the information that may be received and considered regarding a defendant." United States v. Pellerito, 918 F.2d 999, 1002 (1st Cir. 1990). As long as the district court complies with the requirements of Fed. R. Crim. P. 32 by making a finding as to each factual matter controverted by the defendant, the district court "has a right to use the evidence presented at trial in determining the sentence to be imposed." Id. Accordingly, we have upheld the sentencing judge's reliance on trial evidence when the trial had resulted in a mistrial and the defendant had subsequently pleaded guilty, United States v. Hanono-Surujun, 914 F.2d 15, 19 (1st Cir. 1990), and-as in the instant case-when the defendant had pleaded guilty and did not stand trial, and the trial evidence stemmed from the trial of co-defendants. United States v. Fuentes-Moreno, 895 F.2d 24, 26 (1st Cir. 1990). Our review of the record shows that Atilio did not controvert any specific facts from that trial. Accordingly, the district court was entitled to rely on evidence from the trial of Giraldo Parra in reaching its determination under Sec. 3B1.1.
 
 
 7
 In any event, even if the district court had disregarded the evidence from the trial of Giraldo Parra, we find that there remained sufficient evidence to sustain the challenged ruling. Since the question whether Atilio was a manager or supervisor "is a question of the application of the Guidelines to the particular facts" of this case, United States v. Wright, 873 F.2d 437, 443 (1st Cir. 1989), we review the district court's determination that the evidence was sufficient only for clear error. United States v. Corcimiglia, 967 F.2d 724, 726 (1st Cir. 1992); Wright, supra, 873 F.2d at 444.
 
 
 8
 To meet its burden of proving that an upward adjustment is warranted, the government must demonstrate that the defendant exercised "some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." United States v. Castellone, 985 F.2d 21, 26 (1st Cir. 1993) (quoting United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990)). At the change of plea hearing, the prosecution offered the following account of Atilio's actions as part of the narcotics distribution conspiracy.
 
 
 9
 Atilio ... and others operated from a business establishment known as Mi Pequena Colombia Restaurant ... in Hato Rey, Puerto Rico to carry out an operation of distribution of cocaine and heroin....
 
 
 10
 On September 25, 1991, the undercover agent met again with Victor Rodriquez Alvarez at the Magno's Pizza Restaurant at which time another transaction of heroin took place for $7,000. At that-after that transaction took place, Victor Rodriguez Alvarez carried the brown paper bag containing the $7,000 to the Mi Pequena Colombia Restaurant where Victor Rodriguez, where Daniel Alberto Atilio Adinolfi, Jairo Giraldo Parra and Edgar Rodriguez Alvarez were waiting.
 
 
 11
 Victor Rodriguez Alvarez gave the brown paper bag to codefendant and coconspirator Daniel Alberto Atilio Adinolfi at which time they entered the rear room of the restaurant.
 
 
 12
 On December 6, 1991, an informant of the Drug Enforcement Administration made arrangements with Daniel Alberto Atilio Adinolfi to buy half a kilogram of cocaine for $5,000. The confidential informant proceeded to the Mi Pequena Colombia Restaurant where he met with Daniel Alberto Atilio Adinolfi at which time they entered a vehicle, and they drove around the block at which time agents conducting surveillance noticed Jorge Omar Lopez Almeida performing counter-surveillance during the transaction.
 
 
 13
 Once the transaction was completed inside the vehicle, they returned to the Mi Pequena Colombia Restaurant where both the confidential informant and Atilio Adinolfi exited the car. The cooperating individual entered an undercover vehicle being driven at that time by Special Agent Hector Ortiz at which time agents conducting surveillance noticed when Atilio Adinolfi signaled Jorge Omar Lopez Almeida who was directly across from the Mi Pequena Colombia Restaurant, and they also saw-observed when Atilio Adinolfi boarded the vehicle and proceeded to follow the undercover car being driven by Special Agent Hector Ortiz.
 
 
 14
 An undercover agent from the Drug Enforcement Administration who was conducting surveillance inside the restaurant listened when codefendant and coconspirator Edgar Rodriguez Velazquez told Daniel Alberto Atilio Adinolfi that the undercover vehicle was heading west on Domenech Avenue.
 
 
 15
 Subsequently, on December 11, 1991, the cooperating individual informed Daniel Alberto Atilio Adinolfi that the half kilogram of cocaine was short several grams.
 
 
 16
 On December 12th, 1991, the cooperating individual went to the Mi Pequena Colombia Restaurant where Daniel Alberto Atilio Adinolfi provided him with six grams of cocaine missing from the original half kilogram of cocaine, and he also provided him with a sample of heroin. Both the missing six grams of cocaine and the sample of heroin were given to Daniel Alberto Atilio Adinolfi by codefendant and coconspirator Jairo Giraldo Parra.
 
 
 17
 Atilio agreed at the change of plea hearing that this statement of facts was accurate, at least insofar as it related to Atilio's own conduct. The PSI report set out essentially the same version of the facts, to which Atilio made no objection at the sentencing hearing.
 
 
 18
 Although it is true that this account by no means establishes unambiguously that Atilio was a manager or supervisor, we cannot say that such a finding was clearly erroneous. Atilio's conduct in negotiating the details of a sale of cocaine and agreeing to supply a shortfall in delivery would reasonably suggest a managerial or supervisory role if coupled with some evidence that Atilio to some degree directed or controlled at least one other criminal participant. See United States v. Veilleux, 949 F.2d 522, 525 (1st Cir. 1991) ("Setting the details of drug transactions in such a manner as to orchestrate the sales, where the offender also directs at least one accomplice, is sufficient to uphold a Sec. 3B1.1(c) sentencing enhancement against a challenge of clear error"). See also Castellone, supra, 985 F.2d at 26 (the fact that the defendant "determined who purchased, when and where sales took place, prices, and profit ... can be said of any independent, street-level dealer" and is insufficient where "[t]here is simply no evidence that [the defendant] exercised any control over ... anyone else").
 
 
 19
 The necessary evidence that Atilio to some degree directed or controlled at least one other accomplice is present here. When Victor Rodriguez Alvarez entered the Mi Pequena Colombia restaurant on September 25, 1991, he handed over a brown paper bag-containing $ 7,000 of proceeds from the sale of heroin-to Atilio. The fact that Rodriguez Alvarez rendered the proceeds of the drug transaction to Atilio reasonably suggests that Atilio exercised at least some degree of direction or control over Rodriguez Alvarez as part of the criminal organization. Certainly it was not clear error for the sentencing judge to interpret the facts in that light.
 
 
 20
 The judgment of the district court is affirmed.