# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2019

Lyle W. Cayce
Clerk

No. 18-10369

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

FREDRICK FAESHA JOHNSON,

    Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:17-CR-78-1

Before SMITH, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

Fredrick Faesha Johnson challenges the enhancement of his sentence for possessing a dangerous weapon and making a credible threat of violence under U.S.S.G. § 2D1.1(b)(1) and (b)(2), respectively. We AFFIRM the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-10369

## I.    Background

Johnson was indicted on two counts of distribution and possession with intent to distribute methamphetamine based on drug deals that occurred on July 13 and July 17, 2017.  He pleaded guilty pursuant to a written plea agreement[1] to the July 13 offense.[2]

The presentence report ("PSR") suggested a two-level increase to Johnson's base level of 24 pursuant to § 2D1.1(b)(1) for possession of a firearm and another two-level increase pursuant to § 2D1.1(b)(2) because he made a credible threat to use violence.  Johnson filed written objections to the sufficiency of the evidence in support of the § 2D1.1(b)(1) and (b)(2) enhancements and renewed those objections at sentencing.

At the sentencing hearing, the Government called FBI Special Agent Sean Means to testify in support of the enhancements.  Agent Means testified that a confidential informant ("CI") conducted controlled purchases of methamphetamine from Johnson.  The July 17 purchase was captured on a recording device worn by the CI.  After the drug transaction, Agent Means observed Johnson depart the area but return shortly thereafter "in panic mode."  Agent Means then observed "some kind of confrontation" where, through the recording device, he heard Johnson ask the CI about law enforcement in the area and accuse the CI of being an informant.  Johnson "appeared to be agitated" during the confrontation with the CI.

Following this interaction, the CI and Johnson left the area in separate vehicles.  The CI contacted law enforcement and explained that Johnson

---

[1] The plea agreement included an appeal waiver, but because the Government does not invoke the waiver, it does not bar this appeal.  *See United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006) (holding that in the absence of government objection to an appeal based on an appeal waiver, the appeal waiver is not binding).

[2] Although Johnson pleaded guilty only to the July 13 offense, he stated at sentencing that he was not contesting the July 17 offense either.

2

intended to follow the CI home "to make sure he still had the narcotics, that he [had not] turned [the narcotics] over to—or met with police officers." The CI returned to his residence and, out of fear of being searched by Johnson, removed the recording device. The CI stated that he was confronted in the courtyard of his apartment complex by Johnson and someone Johnson identified as his cousin. The CI reported that Johnson's cousin possessed a firearm and that Johnson and his cousin "threatened [the CI] that if he was working with law enforcement, that they were going to do something to him. Threatened him, basically." Law enforcement could not confirm that Johnson or his cousin was in the courtyard and never identified the cousin.

Johnson disputed Agent Means's testimony. He said that following the July 17 drug transaction, he became suspicious that the CI was working with law enforcement. Thus, he returned to the scene "surprised" and "in a panic mode" or "panicked" and asked the CI, "you didn't see the law following you[?]" He then directed the CI to return home because "[the CI] was going there anyway." He told the CI to return home "for [the CI's] safety" to ensure that "he got home safe with the dope." Johnson testified that he then went to the CI's residence alone, not with his cousin.

The district court overruled Johnson's objections to the § 2D1.1(b)(1) and (b)(2) sentencing enhancements. It adopted the PSR, finding that "the [G]overnment ha[d] shown by a preponderance of the evidence that both enhancements appl[ied]" to Johnson's case. Ultimately, the district court sentenced Johnson to 125 months' imprisonment, to run consecutively to any sentence imposed in connection with Johnson's state parole violations, and three years of supervised release. In its statement of reasons, the district court explained that it had considered the advisory guidelines as well as the statutory factors listed in 18 U.S.C. § 3553(a). Johnson timely appealed.

## II.    Standard of Review

We review the district court's application of the Sentencing Guidelines de novo and review its factual findings for clear error. *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007).    The district court's conclusion that the § 2D1.1(b)(1) and (b)(2) sentencing enhancements were applicable is a factual finding that we review for clear error. *United States v. Romans*, 823 F.3d 299, 317 (5th Cir. 2016).    "There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Richardson*, 676 F.3d 491, 508 (5th Cir. 2012) (internal quotation marks omitted).

## III.    Discussion

Johnson first argues that the district court erred by admitting hearsay evidence because the evidence lacked sufficient indicia of reliability.    He appears to also argue that hearsay evidence is per se inadmissible at sentencing.    Both arguments lack merit.[3]

At sentencing, a district court "may consider relevant information without regard to its admissibility under the rules of evidence[4] . . . [if] the information has sufficient indicia of reliability to support its probable accuracy."    U.S.S.G. § 6A1.3(a).    Even uncorroborated hearsay evidence is admissible if it meets this standard. *See, e.g.*, *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010).    "[S]ufficient indicia of reliability . . . 'require[s] that the facts used by the district court for sentencing purposes be reasonably reliable'—a standard not intended to be onerous." *United States v. Malone*,

---

[3] Johnson also argues that all facts used to enhance a sentence should be proven beyond a reasonable doubt.    But only facts that increase a statutory minimum or maximum sentence must be proven beyond a reasonable doubt. *United States v. Collins*, 774 F.3d 256, 266 (5th Cir. 2014).    Johnson was sentenced to 125 months' imprisonment, which is within the statutory range. *See* 21 U.S.C. § 841(b)(1)(C).    Thus, the district court correctly applied the preponderance of the evidence standard. *See United States v. Ruiz-Hernandez*, 890 F.3d 202, 211 (5th Cir.), *cert. denied*, 139 S. Ct. 278 (2018).

[4] Rule 1101(d) of the Federal Rules of Evidence also makes clear that none of those rules (except for privilege) apply to sentencing proceedings.

828 F.3d 331, 337 (5th Cir. 2016) (quoting *United States v. Cabrera*, 288 F.3d 163, 170 (5th Cir. 2002) (per curiam)).

We have determined that this standard was met when other parts of a hearsay declarant's statements were corroborated by the record. *See United States v. Zuniga*, 720 F.3d 587, 592 (5th Cir. 2013) (per curiam) (concluding that a sentencing enhancement based on co-conspirators' hearsay statements was not error when the PSR corroborated other parts of the conspirators' descriptions of the offense); *United States v. Rogers*, 1 F.3d 341, 344 (5th Cir. 1993) (per curiam) (concluding that the district court properly relied on uncorroborated statements from a CI because the government investigation corroborated other details of the drug scheme); *United States v. Chavez*, 947 F.2d 742, 746–47 (5th Cir. 1991) (concluding that uncorroborated hearsay statements were sufficiently reliable because they were "consistent with . . . known facts").

In addition, "[g]enerally, a PSR 'bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations.'" *United States v. Fuentes*, 775 F.3d 213, 220 (5th Cir. 2014) (per curiam) (quoting *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012)). Information from police reports may be sufficiently reliable. *Fuentes,* 775 F.3d at 220. Further, a district court may consider hearsay when making its determinations. *Nava*, 624 F.3d at 230–31. "The defendant bears the burden of presenting rebuttal evidence to demonstrate that the information in the PSR is inaccurate or materially untrue." *United States v. Cervantes*, 706 F.3d 603, 620–21 (5th Cir. 2013) (quoting *United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010)).

Here, though there is no independent evidence to corroborate the CI's statements about the confrontation after the drug transaction, the district court's determinations were plausible in light of the record as a whole. *See*

*Richardson,* 676 F.3d at 508.  After the drug transaction, the CI told law enforcement that Johnson returned to the CI's car because he believed that law enforcement was in the area and that Johnson told the CI to return home so that Johnson could ensure "he [had not] turned [the narcotics] over to—or met with police officers."  Agent Means's eyewitness account, audio from the CI's recording device, and Johnson's testimony at sentencing all corroborated the CI's statements.  Further, the information in Johnson's PSR used to support the § 2D1.1(b)(1) and (b)(2) enhancements was derived from reports prepared by the Taylor County Sheriff's Office, the United States Attorney's Office, and Agent Means, and thus carries sufficient indicia of reliability.  Finally, though Johnson testified that he was alone when he met the CI at the CI's apartment after the drug transaction, he did not provide any other evidence to that effect, and the district court is not required to believe his uncorroborated testimony.  The district court, which observed the demeanor of the witnesses—including Johnson—was within its discretion to credit Agent Means's testimony, as well as the PSR and hearsay evidence, over Johnson's testimony.  *See United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996) ("Credibility determinations in sentencing hearings 'are peculiarly within the province of the trier-of-fact.'" (quoting *United States v. Sarasti*, 869 F.2d 805, 807 (5th Cir. 1989))).  Thus, the district court did not clearly err in finding that the CI's statements were reliable.

Second, Johnson argues that there was insufficient evidence to support the enhancements.  This argument is essentially the same as his first—that the only evidence supporting the enhancements was the CI's uncorroborated hearsay statements—and thus also lacks merit.

U.S.S.G. § 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with the

offense.[5]  Vicarious possession justifies application of the enhancement if the defendant "could have reasonably foreseen that possession." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764–65 (5th Cir. 2008) (quoting *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991)).  Possession of a firearm during drug dealings is "[o]rdinarily . . . foreseeable because firearms are 'tools of the trade.'" *United States v. Mergerson*, 4 F.3d 337, 350 (5th Cir. 1993) (quoting *United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990)).  Section 2D1.1(b)(2) may be applied cumulatively with § 2D1.1(b)(1) in the event that the defendant possessed a dangerous weapon and used violence, made a credible threat to use violence, or directed the use of violence.  U.S.S.G. § 2D1.1(b)(2) & cmt. 11(B).

Agent Means testified that the CI told him that Johnson arrived at the CI's apartment complex with his cousin, who had a gun, and that the two men "threatened [the CI] that if he was working with law enforcement, that they were going to do something to him.  Threatened him, basically."  This information was also in the PSR.  The district court did not clearly err by relying on this evidence, and thus did not clearly err by applying the enhancements.

AFFIRMED.

---

[5] Although the alleged conduct supporting the enhancement occurred soon after the drug transaction was complete, "[t]he district court can properly consider related relevant conduct in determining the applicability of section 2D1.1(b)(1)." *United States v. Snelson*, 687 F. App'x 422, 424 (5th Cir. 2017) (per curiam) (brackets omitted) (quoting *United States v. Paulk*, 917 F.2d 879, 884 (5th Cir. 1990)).